(C.D. 4551)

Van Camp Sea Food Co. *v.* United States

---

[10] See, for example, the following Congressional comments on H.R. 11970, which was subsequently enacted as the Trade Expansion Act of 1962:

*Rep. Brown.* * * * I do not care which President may be in office, because I have opposed some of those things under a Republican administration just as I am against this proposal now to give the President of the United States unlimited powers in the field of trade tariffs, and import duties such as have never been exercised by any President in the past, have never been granted to any President. * * * 108 Cong. Rec. 11912 (1962).

*        *        *        *        *        *        *

*Sen. Curtis.* * * * The pending bill represents the greatest delegation of power that has ever been given to any President. Heretofore our trade agreements have prevented a negotiation of 50 percent of the tariffs. This bill authorizes the President to wipe out the tariffs. It also authorizes him to impose tariffs even on goods that are not dutiable at the present time. *Id.* at 19756.

*        *        *        *        *        *        *

*Sen. Humphrey.* With regard to the first—the *new* authority which this act would delegate to the President: There are those who charge that the Trade Expansion Act would result in the full and complete abandonment of the constitutional authority of Congress to regulate tariffs. This act would do nothing of the kind. What it does is to continue for a limited fixed period the delegation of authority to set tariff rates within limits defined by Congress and with well-established safeguards that has [sic] been in effect since 1934. * * * [Emphasis added.] *Id.* at 19867.

36

Court No. 67/72939

(Decided July 12, 1974)

*Glad, Tuttle & White* (*Robert Glenn White* of counsel) for the plaintiff.
*Carla A. Hills*, Assistant Attorney General (*Joseph I. Liebman* and *Herbert P. Larsen*, trial attorneys), for the defendant.

WATSON, Judge: This case raises the question of whether the cost of the cans in which certain tuna fish was imported should be deducted from the value of the importation. The claims by plaintiff under general headnote 6 (b) (i) [1] and item 807.00 [2] of the TSUS if granted would

---

[1] The text of general headnote 6 is set out *infra*.

[2] Plaintiff has made its claim under item 807.00 as originally enacted and as twice later amended by Pub. L. 89–241, sec. 85 and Pub. L. 89–806, sec. 1(a). By their own terms the later two amendments were made applicable to articles entered before their ordinary effective date if the amendments would have resulted in a smaller amount of duty. Since in my opinion the imported canned tuna fish stands to benefit no more from the later amended language than from the original enactment, only the original item 807.00 need be considered.

The language of item 807.00 in original and amended versions and the unchanged relevant portion of headnote 3 referred to therein are as follows:

Articles assembled abroad in whole or in part of products of the
United States which were exported for such purpose and
which have not been advanced in value or improved in
condition abroad by any means other than by the act of
assembly _____ A duty upon the
full value of the
imported article,
less the cost or
value of such
products of the
United States
(see headnote 3
of this subpart).

require the cost or value of the cans to be deducted from the full value [3] of the imported article when duty is assessed under item 112.30.[4]

The record in *Williams, Clarke Co., Van Camp Sea Food Co.* v. *United States*, 62 Cust. Ct. 759, C.D. 3864 (1969), *aff'd*, 58 CCPA 98, C.A.D. 1011 (1971), was incorporated herein.

Item 807.00 (as amended by Pub. L. 89-241, sec. 85, 79 Stat. 933, 949) :
  Articles assembled abroad in whole or in part of fabricated components, the product of the United States, which (a) were exported, in condition ready for assembly without further fabrication, for the purpose of such assembly and return to the United States, (b) have not lost their physical identity in such articles by change in form, shape, or otherwise, and (c) have not been advanced in value or improved in condition abroad except by being assembled and except by operations incidental to the assembly process such as cleaning, lubricating, and painting_____ [A duty same as item 807.00 above.]

Item 807.00 (as amended by Pub. L. 89-806, sec. 1(a), 80 Stat. 1523) :
  Articles assembled abroad in whole or in part of fabricated components, the product of the United States, which (a) were exported in condition ready for assembly without further fabrication, (b) have not lost their physical identity in such articles by change in form, shape, or otherwise, and (c) have not been advanced in value or improved in condition abroad except by being assembled and except by operations incidental to the assembly process such as cleaning, lubricating, and painting_____ [A duty same as item 807.00 above.]

Schedule 8, part 1, subpart B, headnote 3, Tariff Schedules of the United States :
  Subpart B headnotes :
  *        *        *        *        *        *        *
  3. Articles assembled abroad with components produced in the United States.—The following provisions apply only to item 807.00 :
    (a) The value of the products of the United States assembled into the imported article shall be—
      (i) the cost of such products at the time of the last purchase ; or
      (ii) if no charge is made, the value of such products at the time of the shipment for exportation,
  as set out in the invoice and entry papers ; except that, if the appraiser concludes that the amount so set out does not represent a reasonable cost or value, then the value of such products shall be determined in accordance with section 402 or 402a of this Act.
    (b) The duty of the imported article shall be at the rate which would apply to the imported article itself, as an entirety without constructive separation of its components, in its condition as imported if it were not within the purview of this subpart. If the imported article is subject to a specific or compound rate of duty, the total duties shall be reduced in such proportion as the cost or value of such products of the United States bears to the full value of the imported article.

[3] Of the 6062 cases involved herein 3000 were appraised at $6.75 per case and 3062 at $6.85 per case.

[4] There is no dispute that the importation is classifiable under item 112.30, the relevant language reading as follows :
  Schedule 1, part 3, subpart C, Tariff Schedules of the United States :
    Fish, prepared or preserved in any manner, not in oil, in airtight containers :
      *    *    *    *    *    *    *
      Tuna :
112.30        In containers weighing with their contents not over 15 pounds each * * *__ 12.5%ad val.

The cans in which this tuna was imported were assembled in Ecuador from can segments made in the United States. The can segments consisted of ends and cylinders exported in collapsed form for the purpose of reducing shipping volume and cost. There was no difference in price to the plaintiff between the can in flattened form and in partially assembled form, that is with one end open.

In Ecuador the cylinder segment was opened by spinning on rubber rollers. Lips called flanges were formed on the cylinder by the discs of a flanging machine which forced the open edges of the cylinder in an outward direction. On another machine the ends were joined to the cylinder by compressing the flanges and the ends together. Between the joining of the first and second end, of course, a piece of prepared tuna fish was packed into the can. Labels were then glued to the cans, and they were packed six in a case for shipment to the United States. It is not disputed that these cans are the usual type of container for their contents and are not designed for, or capable of, reuse.

Defendant's most telling attack on plaintiff's claim is based on general headnote 6 of the TSUS which deals specifically with the tariff treatment of containers.

General headnote 6, TSUS:

6. Containers or Holders for Imported Merchandise. For the purposes of the tariff schedules, containers or holders are subject to tariff treatment as follows:

(a) Imported Empty: Containers or holders if imported empty are subject to tariff treatment as imported articles and as such are subject to duty unless they are within the purview of a provision which specifically exempts them from duty.

(b) Not Imported Empty: Containers or holders if imported containing or holding articles are subject to tariff treatment as follows:

(i) The usual or ordinary types of shipping or transportation containers or holders, if not designed for, or capable of, reuse, are not subject to treatment as imported articles. Their cost, however, is, under section 402 or section 402a of the tariff act, a part of the value of their contents and if their contents are subject to an ad valorem rate of duty such containers or holders are, in effect, dutiable at the same rate as their contents, except that their cost is deductible from dutiable value upon submission of satisfactory proof that they are products of the United States which are being returned without having been advanced in value or improved in condition by any means while abroad.

(ii) The usual or ordinary types of shipping or transportation containers or holders, if designed for, or capable of, reuse, are subject to treatment as imported articles separate

and distinct from their contents. Such holders or containers are not part of the dutiable value of their contents and are separately subject to duty upon each and every importation into the customs territory of the United States unless within the scope of a provision specifically exempting them from duty.

(iii) In the absence of context which requires otherwise, all other containers or holders are subject to the same treatment as specified in (ii) above for usual or ordinary types of shipping or transportation containers or holders designed for, or capable of, reuse.

The deciding language in the above headnote is the requirement in 6(b)(i) that for the cost of the usual unreuseable containers to be deductible from dutiable value proof must be submitted that they were made in the United States and are being returned "* * * without having been advanced in value or improved in condition by any means while abroad."

It seems inescapable to me that the imported containers have been advanced in value or improved in condition by means of assembly and that the fatal effect of the words "by any means" cannot be avoided. I have explored the possibility that, despite the apparent absolute tone of 6(b)(i), it might still be broad enough to encompass the change wrought by the assembly of the can but in the end I had to reject this approach. If I could make an analogy between the assembly of these cans and the folding of paper boxes (those in which flaps are inserted one into another), I could perhaps call it an assembly without an advancement in value or improvement in condition and justify it as one justifies a "de minimis" situation. In reality, however, I see the imported container as being improved in a significant degree from its original unassembled condition by an assembly process which is more than simple or casual. I cannot therefore overlook the improvement in condition.

I am also dissuaded from glossing over the significance of the assembly process by the residual effects of the decision in *Seideman Products Co. v. United States*, 37 CCPA 83, C.A.D. 423 (1950). In that case involving facts strikingly similar to those herein, the importer's claim for duty-free entry of certain tuna cans under paragraph 1615(a) of the Tariff Act of 1930 was rejected. The relevant language of paragraph 1615(a) required that the cans be returned "* * * without having been advanced in value or improved in condition by any process of manufacture or other means." The court, at page 88, stated "[t]hat the knocked-down cans * * * have been improved in value by a manufacturing operation so as to constitute usable cans, in our opinion, cannot be gainsaid." The operation referred to was substantially similar to the one which took place in this case.

Although in the period since that decision a new tariff act has come into effect with a more detailed array of headnotes and provisions dealing with the duty-free entry of American-made containers, products or components, the similarity between the language of paragraph 1615(a) and general headnote 6(b)(i) cannot be ignored. Subsequent decisions under item 807.00 which took an expansive view of assembly [5] may cause us to view as excessive the characterization of the assembly of the can in the *Seideman* case as manufacturing. Nevertheless, under general headnote 6(b)(i), it is not the choice of a word such as manufacturing or fabricating or assembling which controls but the fact that the process to which the can had been subjected, whatever we call it, had advanced it in value or improved it in condition. Thus, the attitude expressed in the *Seideman* case remains valid and influential and is another factor which determines my reading of general headnote 6(b)(i).

Finally, as regards the interpretation of 6(b)(i), I must take into account the fact that item 807.00 specifies assembly as the only means of advancing a product in value or improving its condition which will not disqualify it for duty-free treatment. This naturally suggests that assembly which normally advances the value or improves the condition of a product must be specifically permitted. Since general headnote 6(b)(i) does not mention assembly as a permissible additional process, I see no way the assembly of the imported cans can come within a plausible interpretation of 6(b)(i).

Since for the reasons discussed above the cans cannot obtain duty-free treatment under the conditions set out in general headnote 6(b)(i), it remains to be seen only whether item 807.00 can provide the duty-free treatment desired by the importer.

First, I cannot help but be impressed by the existence of a headnote devoted exclusively to the importation of containers. If there is a headnote dealing specifically with the tariff treatment of containers and if that headnote describes in very definite terms the circumstances under which the cost of usual containers shall be deducted from dutiable value, then it becomes extremely difficult to give those containers more generous terms under a provision whose coverage of containers is problematical. Thus, I cannot interpret a provision which speaks of assembling articles abroad to cover the canning of food because of my awareness of headnote 6(b)(i).

Second, my understanding of item 807.00 is influenced by the use of the word "assembled" in the phrase "[a]rticles assembled abroad." I am of the opinion that word indicates a process of manipulation

---

[5] See for example, *General Instrument Corporation* v. *United States,* 59 CCPA 171, C.A.D. 1062, 462 F. 2d 1156 (1972) ; see also, *C. J. Tower & Sons of Buffalo, Inc.* v. *United States,* 62 Cust. Ct. 643, C.D. 3840, 304 F. Supp. 1187 (1969).

of the components other than canning or packaging. In other words, I believe item 807.00 speaks of articles which have gone through an assembly stage of a manufacturing process prior to being packed for shipping.

Third, I am persuaded by the pattern of the item 800.00 series for articles exported and returned and the interrelationship with general headnote 6 that the former are intended to encompass containers only when they are specifically provided for. For example, item 808.00 [6] specifically provides for the duty-free status of reusable substantial containers, and the headnote of schedule 8, part 1, subpart C in which item 808.00 appears makes specific reference to general headnote 6(b)(ii). Most importantly, headnote 1 of subpart C [7] refers to general headnote 6 in connection with its mention that the subpart covers only substantial reusable containers which are "subject to treatment as imported articles." This indicates to me a clear awareness that only those containers which by virtue of general headnote 6 are subject to treatment as independent imported articles can come within the purview of specific tariff items elsewhere in the tariff schedules. While I do not generally make much of the characterization of importations as "articles" or "products", I do see a legitimate distinction between usual containers and importations which the tariff schedules are generally inclined to refer to as "articles" or "products". As a rule, the usual containers are tariff nonentities which are not articles or products in the ordinary sense of the tariff act. The recent case of *Kurt S. Adler, Inc.* v. *United States*, 61 CCPA 68, C.A.D. 1122 (1974) makes it clear that the usual containers of imported articles are not to be treated as separate articles or products. In that case the non-communist origin of a portion of the usual container of an article of communist origin was to no avail in an attempt to obtain a preferred nation rate of duty for the disputed "non-communist" portion.

It would logically appear that the American origin of the container and the possible acceptability of its assembly abroad are to no avail when a usual container cannot be considered as a product apart from its contents. Item 807.00 presupposes the separate consideration of a product of American origin a premise inconsistent with the prevailing view of usual containers. It must follow that plaintiff's claim under item 807.00 cannot be reconciled with the correct tariff treatment of the containers in question which requires that they be treated as nonentities.

---

[6] "Substantial containers and holders, if products of the United States (including shooks and staves of United States production when returned as boxes or barrels containing merchandise) * * *."

[7] "This subpart covers only substantial containers and holders which are of the usual or ordinary types used in the shipment or transportation of goods and which are reusable for such purposes and subject to treatment as imported articles (see general headnote 6(a) and (b)(ii))."

42

In conclusion, I must admit to a certain sense of dissatisfaction at the existence of a situation in which an article might stand a better chance of obtaining duty-free status for one of its component products under item 807.00 than an imported canned or "contained" product stands for obtaining duty-free status for its container under general headnote 6(b)(i) even though what is done to the container abroad may be no more than would be permissible under an item 807.00 "assembly" situation. Nevertheless, since I am of the opinion that general headnote 6(b)(i) is meant to operate on importations involving ordinary unreusable containers of American origin and item 807.00 is not I can only suggest that the ultimate resolution of this problem may be legislative rather than judicial. In light of my views regarding general headnote 6(b)(i), it would take an amendment of that headnote to provide that the assembly abroad of usual unreusable containers of American origin does not bar them from duty-free status.

Judgment will be entered accordingly.